IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| | Case No. 3:09-cr-109 |
| vs. | : |
| | JUDGE WALTER HERBERT RICE |
| PIERRE COLQUITT, | : |
| Defendant | : |

FINDINGS OF FACT AND CONCLUSIONS OF LAW; COURT'S VERDICTS -- DEFENDANT GUILTY ON COUNTS 1, 2, 4, AND 5 OF FIRST SUPERSEDING INDICTMENT; DEFENDANT'S *PRO SE* MOTION TO DISMISS FOR AN ALLEGED *BRADY* VIOLATION (DOC. #64), *PRO SE* MOTION TO SUBPOENA PHONE RECORDS (Doc. #68), AND *PRO SE* MOTION TO REMOVE COUNSEL AND TO DECLARE A MISTRIAL (Doc. #69) ARE OVERRULED

The Court held a bench trial in the above-captioned case on July 21, 2010, July 23, 2010, and October 4 through October 6, 2010. Closing arguments were held on November 18, 2010. The Court now makes the following findings of fact and conclusions of law, and determines that Defendant is guilty on Counts 1, 2, 4, and 5 of the First Superseding Indictment.

I.   **Procedural History**

Defendant Pierre Colquitt was originally indicted on July 28, 2009, on drug trafficking and firearms charges. A First Superseding Indictment, filed on

September 8, 2009, charged him as follows:

## COUNT ONE
[21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B)]

Beginning on an exact date unknown, but at least by on or about March 19, 2009, and continuing up to and including on or about May 29, 2009, in the Southern District of Ohio, the defendant, PIERRE O. COLQUITT, did knowingly and intentionally combine, conspire, confederate and agree with other persons both known and unknown to the Grand Jury to knowingly, intentionally, and unlawfully distribute and possess with the intent to distribute heroin, a Schedule I Controlled Substance, namely, in excess of 100 grams of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

All in violation of 21 U.S.C. § 846.

## COUNT TWO
[18 U.S.C. § 924 (c)(1)(A)]

On or about May 29, 2009, in the Southern District of Ohio, the defendant, PIERRE O. COLQUITT, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, conspiracy to distribute and possess with the intent to distribute heroin, in violation of 21 U.S.C. §§ 846 and 841 (a)(1), did knowingly and unlawfully possess firearms, to wit: a Smith & Wesson 9mm semiautomatic pistol, Model SW9VE, Serial No. DSD9353; a RG .22LR caliber six-shot revolver, Model RG23, Serial No. T530613; and a Beretta .22 LR caliber semi-automatic pistol, Model U22NEOS, Serial No. P56864.

In violation of 18 U.S.C. § 924 (c)(1)(A).

## COUNT THREE
[18 U.S.C. §§ 922(g)(l) and 924(a)(2)]

On or about May 29, 2009, in the Southern District of Ohio, the defendant, PIERRE O. COLQUITT, having been previously convicted in a court of law, that is the Clark County, Ohio Common Pleas Court, of a crime punishable by imprisonment for a term exceeding one (1) year, to wit: possession of cocaine base, commonly known as "crack", did knowingly possess in and affecting interstate commerce firearms and

ammunition, to wit: a Smith & Wesson 9mm semiautomatic pistol, model SW9VE, Serial No. DSD9353 with 14 rounds of ammunition; a RG .22LR caliber six-shot revolver, Model RG23, Serial No. T530613 with 4 rounds of .22 LR ammunition; a Beretta .22 LR caliber semi-automatic pistol, Model U22NEOS, Serial No. P56864 with 8 rounds of .22 LR ammunition.

In violation of 18 U.S.C. §§ 922(g)(l) and 924(a)(2).

## COUNT FOUR
[21 U.S.C. §§ 841(a)(l) and (b)(l)(C) and 860]

On or about April 1, 2009, in the Southern District of Ohio, the defendant, PIERRE O. COLQUITT, knowingly and intentionally distributed heroin, a Schedule I Controlled Substance, in violation of 21 U.S.C. § 841(a)(l), within 1000 feet of the real property comprising Fulton Elementary School in Springfield, Ohio, a public elementary school.

In violation of 21 U.S.C. §§ 841(a)(l) and (b)(l)(C) and 860.

## COUNT FIVE
[21 U.S.C. §§ 841(a)(1) and (b)(l)(C) and 860]

On or about March 19, 2009, in the Southern District of Ohio, the defendant, PIERRE O. COLQUITT, knowingly and intentionally distributed heroin, a Schedule I Controlled Substance, in violation of 21 U.S.C. § 841 (a)(1), within 1000 feet of the real property comprising Fulton Elementary School in Springfield, Ohio, a public elementary school.

In violation of 21 U.S.C. §§ 841(a)(1) and (b)(l)(C) and 860.

Doc. #19. The First Superseding Indictment also seeks forfeiture of the firearms and ammunition seized from 826 W. Pleasant Street. *Id.*

On September 15, 2009, Defendant entered a plea of "not guilty" to all five counts. On November 9, 2009, he filed a motion to suppress evidence and requested a hearing in accordance with *Franks v. Delaware*, 438 U.S. 154 (1978).

3

An evidentiary hearing was held on February 16, 2010. On April 27, 2010, the Court overruled Defendant's motion to suppress and his request for a *Franks* hearing. Doc. #36. Defendant then requested that new counsel be appointed. The Court granted his request and set the matter for trial.

Before trial, the parties stipulated that "[p]rior to May 29, 2009, the defendant Pierre O. Colquitt had been convicted in a court of the United States of a crime punishable by imprisonment for more than one year. Therefore, on May 29, 2009, defendant Pierre O. Colquitt was a convicted felon." Doc. #46.

On July 19, 2010, Defendant signed a waiver of his right to a jury trial. Doc. #50. The bench trial began on July 21, 2010, and resumed on July 23, 2010. On July 23rd, counsel for Defendant expressed concern about his client's mental status, and moved the Court for a determination of Defendant's competency to stand trial. Doc. #53. The Court sustained that motion and continued the bench trial pending a competency evaluation.

After it was determined that Defendant was, in fact, competent to stand trial, the bench trial resumed on October 4, 2010. After both parties had presented all of their evidence and transcripts of the proceedings were made available, the Court scheduled closing arguments, which were held on November 18, 2010.

On the same date, relying on *Brady v. Maryland*, 373 U.S. 83 (1963), Defendant filed a *pro se* motion to dismiss, arguing that the Government had

4

intentionally withheld exculpatory evidence in the form of an audio recording of a drug buy that allegedly took place on May 27, 2009. Doc. #64. The Court gave defense counsel until November 23, 2010, to decide whether he would adopt the *pro se* motion. Doc. #67. Defense counsel chose not to do so.

Defense counsel did, however, file a motion to dismiss Count 3 of the First Superseding Indictment, which charges Defendant with being a felon in possession of a firearm. He argued that the judgment entries of conviction on which the Government relied were void. Doc. #66. In response, the Government also moved to dismiss Count 3, conceding that Ohio law concerning whether unperfected criminal judgments may be used as a basis for felon-in-possession charges was somewhat unsettled. Doc. #70. The Court sustained the Government's motion and dismissed Count 3 of the First Superseding Indictment with prejudice. Doc. #74.

On December 2, 2010, Defendant filed a *pro se* motion asking the Court to issue a subpoena for certain cell phone records in support of his previously-filed *pro se* motion to dismiss under *Brady*. Doc. #68. The following day, Defendant filed another *pro se* motion asking the Court to remove his attorney from the case and to declare a mistrial, complaining that his attorney has ignored his requests to subpoena the cell phone records and has failed to communicate with him. Doc. #69.

5

## II. Pending *Pro Se* Motions

Under the Sixth Amendment to the United States Constitution, a criminal defendant has a right to counsel. Alternatively, a criminal defendant may choose to represent himself. However, there is no constitutional right to hybrid representation. *See United States v. Mosely*, 801 F.2d 93, 97-98 (6th Cir. 1987); *United States v. Essig*, 10 F.3d 968, 973 (3d Cir. 1993); *United States v. Swinney*, 970 F.2d 494, 498 (8th Cir. 1992). The Court has discretion whether to consider *pro se* arguments raised by defendants who, like Colquitt, are represented by counsel. *Mosely*, 801 F.2d at 98.

As a general rule, this Court will not consider *pro se* motions that have not been adopted by counsel. Because Defendant's attorney has not adopted any of the motions filed by his client, the Court overrules Defendant's *pro se* motion to dismiss for an alleged *Brady* violation (Doc. #64), and *pro se* motion to subpoena phone records (Doc. #68). The Court also overrules Defendant's *pro se* motion to remove counsel and to declare a mistrial (Doc. #69).[1]

## III. Findings of Fact and Conclusions of Law

Federal Rule of Criminal Procedure 23(c) provides, "[i]n a case tried without

---

[1] Defense counsel was given until November 23, 2010 to notify the Court if he planned to adopt Defendant's motion to dismiss for an alleged *Brady* violation. *See* Doc. #65. The other motions were filed on December 2, 2010 (Doc. # 68), and December 3, 2010 (Doc. #69). A December 29, 2010, letter to the Court from Mr. Colquitt indicates that he just found out the previous week that his attorney was not adopting any of his pro se motions. Doc. #72.

6

a jury, the court must find the defendant guilty or not guilty. If a party requests before the finding of guilty or not guilty, the court must state its specific findings of fact in open court or in a written decision or opinion." Although Defendant did not make any such request in this case, the Court nevertheless, due to the period of time that has elapsed, feels somewhat compelled to explain its reasons for the verdicts rendered.

### A. Count 1

Count 1 of the First Superseding Indictment alleges that between March 19, 2009, and May 29, 2009, Defendant knowingly and intentionally conspired with others to distribute and possess with the intent to distribute more than 100 grams of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), all in violation of 21 U.S.C. § 846.

"[T]o sustain a conviction for conspiracy under 21 U.S.C. § 846, the government must have proved: (1) an agreement to violate drug laws, in this case 21 U.S.C. § 841; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Deitz*, 577 F.3d 672, 677 (6th Cir. 2009) (quoting *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005)).

The Court finds that the Government has proven beyond a reasonable doubt that Defendant knowingly and intentionally conspired with Chris Gordon and Latorya Bibbs to distribute and possess with intent to distribute heroin, and that Defendant knowingly and intentionally joined and participated in the conspiracy.

7

Within weeks after Defendant was arrested, Chris Gordon was also indicted on drug trafficking charges. Trial Tr. at 46-47. He agreed to testify truthfully against Defendant in hope of eventually getting a lighter sentence. *Id.* at 63. Likewise, shortly after Defendant's arrest, Defendant's former girlfriend, Latorya Bibbs, was indicted on drug trafficking charges. She agreed to testify truthfully at trial in exchange for immunity from prosecution. *Id.* at 105-06.

Gordon testified that he knew Defendant from previous drug deals. *Id.* at 32, 34. When Gordon bumped into him again in January of 2009, Gordon told him that he was selling heroin, and invited Defendant to give him a call. Defendant first called Gordon in late January or early February of 2009. *Id.* at 35. Gordon sold heroin to Defendant on at least ten occasions between then and May of 2009. *Id.* at 37.

Defendant was one of Gordon's "big customers." At first, Defendant would buy an ounce of heroin once or twice a week, but in April and May of 2009, Defendant was purchasing 5-10 ounces every two weeks.[2] He paid Gordon $1800 per ounce for the heroin, which was pressed to look like a hockey puck. Defendant would initiate contact by cell phone and they would meet at various places in Dayton, including the Five Oaks area, Westwood, and the Miami Chapel area. Gordon testified that Defendant usually brought his girlfriend with him when

---

[2] The Court takes judicial notice that one ounce of heroin equals 28.35 grams.

8

he purchased the heroin. *Id.* at 37-40.

Additional evidence of the conspiratorial relationship between Gordon and Defendant was shown through the testimony of Federal Bureau of Investigation Special Agent Robert Buzzard. Buzzard participated in the execution of a search warrant on Gordon's residence at 1524 S. Broadway in Dayton on July 1, 2009. Buzzard found a copy of the probable cause affidavit supporting Defendant's arrest in a bedroom in Gordon's basement. *Id.* at 99-101. Moreover, Gordon provided $15,000 in bail money when Defendant was arrested. *Id.* at 44-45, 91. He also wrote to Defendant in jail because he was concerned Defendant would "tell" on him. *Id.* at 93-95.

Latorya Bibbs was Defendant's co-distributor in the conspiracy. She dated Defendant from December of 2007 until June of 2009. They lived together, off and on, at 826 West Pleasant Street in Springfield from September of 2008 until May 29, 2009. *Id.* at 105-09. During that time, she and Defendant sold crack cocaine and heroin for a living. *Id.* at 110. They purchased the heroin from Chris Gordon. She often went with Defendant to purchase the drugs from Gordon, meeting at various places in Dayton between January and May of 2009. She observed the drug transactions on four or five occasions, and personally counted out the money once or twice. She specifically remembers counting out $20,000 for one of the buys. The heroin they bought from Gordon was a "circle like hockey pucks." *Id.* at 111-14.

9

After purchasing the heroin from Gordon, they took it back to their house, and broke it down into half-gram and gram packages, which they would then sell from their house at 826 W. Pleasant Street. The half-gram packages sold for $50; the gram packages sold for $100. *Id.* at 115-16. On a typical day, they had about 20 customers and took in thousands of dollars. *Id.* at 116-17. They did not keep all of the heroin in the house because "anything could happen." Defendant stored larger quantities of heroin in different spots in nearby alleys. *Id.* at 117-18, 407.[3]

---

[3] After Defendant was arrested on May 29, 2009, he was taken to the Clark County Jail. The booking officer, Bryan Beller, testified that he was present when Defendant made a phone call to Defendant's grandmother. Defendant told whoever answered the phone that they needed to look for a bag hidden in some weeds or bushes in the house next to his grandmother's house. While Defendant was still on the phone, Beller went upstairs and called Detective Frasco to tell her about the phone conversation that was taking place downstairs. Trial Tr. at 576-80.

Earlier that day, Springfield Detective Eugene Bell and Detective Via had executed a search warrant at Defendant's grandmother's house, located at 325 W. Jefferson Street in Springfield. After receiving Beller's phone call, Frasco directed Bell and Via to return to that vicinity to investigate. When they pulled up, they saw Defendant's grandmother and another woman, who was on the phone, near the shrubbery by the vacant house next door. The women walked away when the officers pulled up. Bell and Via searched the weeds and shrubbery but found nothing. They then called a K9 unit to the scene. The dog came with its handler, searched, and alerted to a bag in the weeds. *Id.* at 596-99, 606, 629. The parties have stipulated that the bag that was found contained 85.03 grams of heroin. Govt. Ex. 33; Doc. #60.

Officer Beller testified that when he came back downstairs after talking to Frasco a second time, Defendant was still on the phone at the jail. Beller heard Defendant say, "What do you mean they're back out there? Well, don't answer the door. They have the dog? Why do they have the dog out there?" Trial Tr. at 580-82.

10

Based on the evidence presented at trial, the Court finds that the Government has proven beyond a reasonable doubt that Defendant, Gordon, and Bibbs conspired to distribute and possess with the intent to distribute heroin, and that Defendant knowingly and voluntarily joined and participated in that conspiracy. Additional evidence of the conspiracy was provided by Darryl Jenkins' testimony.

Jenkins, a drug addict whose nickname was "Buddy," bought heroin from Defendant and Bibbs on a daily basis. *Id.* at 145, 431. After Buddy was arrested for possession of heroin, he agreed to act as a confidential informant and testify against Defendant in exchange for dismissal of the charges. *Id.* at 428-29. He worked with Detective Keri Frasco of the Springfield Police Department, Narcotics Division. Together, they orchestrated three controlled buys from Defendant -- on March 19, 2009, April 1, 2009, and April 22, 2009. The first two controlled buys took place at Defendant's house at 826 W. Pleasant Street in Springfield. The final controlled buy took place in Defendant's vehicle near Buddy's house. *Id.* at 249-55.

On each occasion, Buddy, at Frasco's request, called Defendant's cell phone to arrange the buy. Frasco then searched Buddy, and gave him a voice-activated tape recorder and money to buy the heroin. She would drop Buddy near the agreed-upon meeting place. He would purchase the heroin from Defendant and

11

bring it back to Frasco, along with the tape recording.[4] *Id.* at 432-37. At trial, Bibbs identified the voices on the three tape recordings of the controlled buys as Buddy, Defendant, and herself.[5] *Id.* at 147-54.

On May 29, 2009, Springfield police officers arrested Defendant during a felony traffic stop. He had $1200 in his back left pocket and the cell phone that Buddy had called to arrange the controlled buys. *Id.* at 283-84, 555. On the same date, the officers executed a search warrant of 826 W. Pleasant Street. *Id.* at 257-59. The front door of the house was fortified with a bar, and surveillance cameras were positioned at the front and back doors. *Id.* at 267-69.

Inside, the officers discovered several baggies of heroin, marijuana, and digital scales on the dining room table. These baggies of heroin were admitted at trial as Government Exhibits 19A, 19B, and 19C. *Id.* at 259, 266. The parties have stipulated that Exhibit 19A contains 17.01 grams of heroin, Exhibit 19B contains 5.00 grams of heroin, and Exhibit 19C contains 3.78 grams of heroin. Doc. #60.

---

[4] The baggies of heroin that Buddy purchased during the three controlled buys were admitted at trial as Government Exhibits 3, 6, and 12. The parties stipulated that Exhibit 3 contains .98 grams of heroin, Exhibit 6 contains 1.101 grams of heroin, and Exhibit 12 contains 1.00 grams of heroin. Doc. #60.

[5] When Buddy contacted Defendant on March 19, 2009, to arrange the first controlled buy, it was Bibbs who answered the phone and invited him to the house to buy the heroin. Trial Tr. at 148-49.

At trial, Bibbs was shown a picture of the dining room table as it appeared when the officers entered the house. She testified that the heroin on the table belonged to her and Defendant and that they had planned to sell it. A hammer sitting on the table was used to break apart the heroin, and the scales were used to weigh the drugs. *Id.* at 125-26. Because they were selling drugs, Defendant had installed surveillance cameras so that they could see who was coming up to the door. *Id.* at 128.

Notwithstanding the fact that Gordon, Bibbs, and Jenkins have a history of drug addiction and all testified in consideration of possible favorable treatment by the Government, the Court found their testimony to be very credible. They generally corroborated each other's testimony, and their testimony was corroborated, in large part, by other evidence. The fact that they could not always remember specific dates or specific quantities of drugs bought and sold is not surprising.

Based on the evidence presented, the Court finds that the Government has proven beyond a reasonable doubt that Defendant violated 21 U.S.C. § 846, by knowingly and intentionally conspiring with others to distribute and possess with the intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and that Defendant knowingly and intentionally joined and participated in the conspiracy. Therefore, the Court finds that Defendant is GUILTY of the charge set forth in Count 1 of the First Superseding Indictment.

**B.     Count 2**

Count 2 of the First Superseding Indictment alleges that on or about May 29, 2009, Defendant, in furtherance of a drug trafficking crime, knowingly and unlawfully possessed three firearms: (1) a Smith & Wesson 9mm semiautomatic pistol; (2) a RG .22LR caliber six-shot revolver; and (3) a Beretta .22LR caliber semi-automatic pistol, in violation of 18 U.S.C. § 924(c)(1)(A).

In order to obtain a conviction on this charge, the Government must prove beyond a reasonable doubt that Defendant committed the drug trafficking crime alleged in Count 1, that he knowingly possessed a firearm, and that the possession of the firearm was in furtherance of the drug trafficking crime. The Court has already found Defendant guilty on Count 1. The Court further finds that the Government has proven, beyond a reasonable doubt, that Defendant knowingly possessed all three firearms, and that he possessed at least one of those guns, the 9mm pistol, in furtherance of a drug trafficking crime.

During the search of 826 W. Pleasant Street, the detectives found a loaded 9mm pistol hidden in a couch cushion in the living room. They also found a small-caliber revolver handgun in a dresser drawer in an upstairs bedroom, and a semi-automatic .22 Beretta pistol, with magazines in the case, in a gun box in the dining room. *Id.* at 269-73, 496-97, 528-29, 558. These guns were admitted at trial as Government Exhibits 22, 23, and 24. The parties have stipulated that all three firearms were operable and in good working condition up to and including May 29,

2009. Doc. #59.

Bibbs testified that all of these guns belonged to Defendant, and that she saw him in possession of these three guns during the time she lived with him. Bibbs identified the 9mm pistol as the gun they kept in the couch for protection against anyone would might come into the house or try to rob them.[6] Bibbs identified the revolver as the gun that Defendant kept in the drawer in their bedroom. Finally, she identified the Beretta pistol as a gun that he got from a customer. Trial Tr. at 119-22, 129.

Buddy Jenkins also testified that when he purchased heroin from Defendant at the house on 826 W. Pleasant Street, he saw firearms "laying on the table in the front room," although not during the three controlled buys. Buddy was not very familiar with firearms, but he thought that "one was chrome and one was black." He also saw Defendant holding a gun, "[m]ostly just to keep it . . .within his reach." One time, Defendant was waving the gun around, saying that "he wasn't going to go down easy. . . If he was to get arrested, he had firearms to protect himself." *Id.* at 438-39, 469.

Based on the testimony of Bibbs and Jenkins, the Court finds that the Government has proven beyond a reasonable doubt that Defendant knowingly possessed the three firearms at issue. The Government has also proven beyond a

---

[6] During the summer of 2008, someone had broken into the house and took a body vest, a gun, and some heroin. Trial Tr. at 121.

15

reasonable doubt that, at least with respect to the 9mm pistol kept in the living room couch, Defendant possessed that firearm in furtherance of the drug trafficking crime alleged in Count 1.[7] The Court therefore finds Defendant GUILTY of the crime alleged in Count 2 of the First Superseding Indictment.

### C. Count 3

As noted earlier, the Court has dismissed Count 3 of the First Superseding Indictment with prejudice.

### D. Counts 4 and 5

Count 4 of the First Superseding Indictment alleges that on or about April 1, 2009, Defendant knowingly and intentionally distributed heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1), within 1000 feet of a public elementary school.

Count 5 of the First Superseding Indictment alleges that on or about March 19, 2009, Defendant knowingly and intentionally distributed heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1), within 1000 feet of a public elementary school.

In order to obtain a conviction on these charges, the Government must prove

---

[7] It may easily be inferred that Defendant also possessed the other two guns in furtherance of the drug trafficking crime, but Bibbs did not testify about why he kept the other guns in the house, and Jenkins could not specifically identify which guns he saw in Defendant's possession. In any event, a conviction on this charge requires only that Defendant possess *one* of the firearms in furtherance of the drug trafficking crime, and Bibbs' testimony about the 9mm pistol kept in the living room couch for protection satisfies this requirement.

16

beyond a reasonable doubt that Defendant knowingly and intentionally distributed heroin, that Defendant knew that the substance distributed was heroin, and that the distribution took place within 1000 feet of real property comprising a public elementary school. *See* 21 U.S.C. § 860.

As noted earlier, Detective Frasco and Buddy Jenkins testified about the controlled buys of heroin that took place on March 19, 2009, and April 1, 2009, at Defendant's house on 826 W. Pleasant Street. The audiotape of the March 19, 2009, controlled buy makes it clear that Defendant knowingly and intentionally distributed heroin to Buddy on that date. Defendant is heard asking Buddy if he wants one gram or two. Govt. Ex. 2. Although the tape of the controlled buy on April 1, 2009, Govt. Ex. 5, was cut short, the detailed testimony of Buddy and Detective Frasco, concerning how the controlled buy was carried out, proves that Defendant also distributed heroin to Buddy at 826 W. Pleasant Street on that date.

At trial, Detective Frasco testified that she used a rolling tape measure to measure the distance between 826 W. Pleasant Street and Fulton Elementary School. She calculated it to be "approximately six hundred and some feet." Trial Tr. at 243-46, 298-99. Defendant presented no evidence to the contrary.

The Court finds that the Government has proven beyond a reasonable doubt that Defendant knowingly and intentionally distributed heroin to Buddy Jenkins on March 19, 2009, and again on April 1, 2009, that he knew that the substance he was distributing was heroin, and that, on those dates, the distribution took place

17

within 1000 feet of a school.[8] The Court therefore finds Defendant GUILTY of the charges contained in Counts 4 and 5 of the First Superseding Indictment.

IV. **Summary**

For the reasons stated above, the Court finds Defendant Pierre O. Colquitt GUILTY of the charges set forth in Counts 1, 2, 4, and 5 of the First Superseding Indictment. The Clerk shall enter a verdict accordingly. Count 3 was previously dismissed with prejudice.

The Court OVERRULES Defendant's *pro se* motion to dismiss for an alleged *Brady* violation (Doc. #64), *pro se* motion to subpoena phone records (Doc. #68), and *pro se* motion to remove counsel and to declare a mistrial (Doc. #69).

Date: July 19, 2012

WALTER HERBERT RICE
UNITED STATES DISTRICT JUDGE

---

[8] The Government need not show that Defendant knew that the distribution took place within 1000 feet of a school. *United States v. Jackson*, 443 F.3d 293, 299 (3d Cir. 2006); *United States v. Dimas*, 3 F.3d 1015, 1022 (7th Cir. 1993); *United States v. Cross*, 900 F.2d 66, 69 (6th Cir. 1990).