# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

                Plaintiff,     :     Case No. 3:09-cr-109

                                     District Judge Walter Herbert Rice
   - vs -                          Magistrate Judge Michael R. Merz

PIERRE COLQUITT,

                Defendant.     :

## REPORT AND RECOMMENDATIONS

This is an action pursuant to 28 U.S.C. § 2255 on a Motion to Vacate (ECF No. 131). The Motion is before the Court for initial review pursuant to Rule 4(b) of the Rules Governing § 2255 Cases which provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States to file an answer, motion, or other response within a fixed time, or take other action the judge may order.

As with all Motions to Vacate under § 2255, the Motion has been referred to the undersigned Magistrate Judge for review in the first instance.

1

Defendant pleads the following claims:

> **Claim I: Malicious prosecution**. The prosecutor Chris Kinsler falsified evidence and charges to the government to get them to adobt [sic] this case.
>
> **Supporting Facts:** The search warrant is missing certain information along with the blantant [sic] falsehoods. The phone number missing out of the search warrant did not work and this was definitely done to get around certain suppression issues.
>
> **Claim II: Prosecutorial Misconduct**
>
> **Supporting Facts:** The government on two occasions switched the phone number. First at my suppression hearing on February 16, 2010. Second time was July 19, 2010, the government switched the number in my trial folder.
>
> **Claim III: 4th Amendment Violation**
>
> **Supporting Facts:** The search warrant has several falsehoods starting with the April 22, 2009, buy; the May 27, 2009, buy; [and] my criminal history.
>
> **Claim IV: 5th and 6th Constitutional Rights were violated.**
>
> **Supporting Facts:** My due process was violated at my suppression hearing when the government switched the phone number. My lawyer Cheryll Bennett was ineffective because she stood there idle and allowed this to happen without any type of resistance. Derek Farmer did the same thing when the government switched the phone number in the trial folder.

(Motion, ECF No. 131.)

The Motion is supported by a four-page affidavit which contains many assertions of fact not relevant to any of the claims for relief. The relevant allegations will be addressed below.

# ANALYSIS

**Claim I:  Prosecutorial Misconduct**

Colquitt believes someone in Clark County named Chris Kinsler, who apparently was or is an assistant Clark County Prosecutor, was engaged in some sort of vendetta against him that resulted in these charges being brought (See ECF No. 131-1, PageID 1491).

This claim does not state a claim for relief under the United States Constitution.  The record of the case establishes that the United States Attorney's office is the government agency that brought this case to the grand jury and that entity found there was probable cause to indict.  The motivation of persons who brought the relevant facts to the attention of the United States Attorney is irrelevant.

**Claim II:  Prosecutorial Misconduct**

Colquitt claims the Government committed misconduct by "switching" the telephone number at the suppression hearing and again at trial.  He does not explain what he means by "switching."

The record of the case shows that Judge Rice carefully considered the evidence regarding the telephone number supposedly used to make a controlled buy on May 27, 2009, and concluded there was no violation of *Brady v. Maryland*, 373 U.S. 83 (1963)(Decision and Entry Overruling "Defendant's *Pro se* Motion to Dismiss, ECF No. 95).  Thus this question has already

been decided against Colquitt's position. Furthermore, it was available on the record and does not appear to have been raised on appeal to the Sixth Circuit. See *United States v. Colquitt*, No. 13-4501 (6th Cir. Mar. 11, 2015)(unpublished; copy at ECF No. 127). Therefore the claim is also procedurally defaulted. *United States v. Frady*, 456 U.S. 152 (1982); *Kaufman v. United States*, 394 U.S. 217 (1969); *Ratliff v. United States*, 999 F.2d 1023 (6th Cir. 1993).

**Claim III. Fourth Amendment Violation**

In his Third Claim, Colquitt asserts his Fourth Amendment rights were violated on the basis of false statements made in the affidavit in support of the search warrant in this case.

This issue was thoroughly considered by Judge Rice and his decision not to suppress the evidence was affirmed by the Sixth Circuit. *United States v. Colquitt, supra.* Thus this issue is barred from reconsideration in a § 2255 Motion by the doctrine of *res judicata.*

Furthermore, Federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts. *Stone v. Powell,* 428 U.S. 465 (1976). *Stone* applies to bar consideration of Fourth Amendment claims in § 2255 proceedings. *Ray v. United States,* 721 F.3d 758 (6th Cir. 2013).

**Claim IV.  Fifth and Sixth Amendment Rights Violated**

In his Fourth Claim for Relief, Colquitt asserts his due process rights were violated when the Government "switched" the phone numbers and his Sixth Amendment right to effective representation of counsel was violated when neither Cheryll Bennett (at the suppression hearing) nor Derek Farmer (during trial) did anything about it.

In considering the telephone number issue, Judge Rice wrote:

> Since it appears to be undisputed that there is no audio recording of the May 27th phone call from the confidential informant to Bibbs, the "evidence" allegedly suppressed in this case must be the Government's knowledge that Bibbs's cell phone was inoperable on that date. Assuming arguendo that this evidence is favorable to Defendant and that the Government suppressed it, Defendant cannot show that he was prejudiced as a result.
>
> Notably, Defendant claims that he is the one who first informed the Government, on the date of the suppression hearing, that Bibbs's cell phone was inoperable on May 27th. As the Sixth Circuit noted in *Carter v. Bell*, "*Brady* is concerned only with cases in which the government possess information which the defendant does not ... there is no *Brady* violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question ... " 218 F. 3d 581, 601 (6th Cir. 2000). Because Defendant already knew that the cell phone was inoperable on the date in question, this would appear to fall outside the scope of *Brady*.
>
> Moreover, the suppression of the evidence in question was not "material either to guilt or punishment." Brady, 373 U.S. at 87. It is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a

5

> probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).
>
> Here, the phone call at issue was referenced in Detective Frasco's May 27, 2009, "buy report," Def.'s Ex. Bat Suppression Hr'g, and cited in the Criminal Complaint, Doc. #1. Nevertheless, the Government did not rely on this particular phone call in proving any of the charges filed against Defendant. It did not elicit any evidence at trial concerning the controlled buy that was the subject of that particular phone call, nor did it include the heroin purchased during that controlled buy in its drug quantity calculations.
>
> The Government's case was based on three other controlled buys that took place on March 19, 2009, April 1, 2009, and April 22, 2009, on evidence obtained when the search warrant was executed on May 29, 2009, and on the testimony of other witnesses. The Government presented ample other evidence that Bibbs knowingly conspired with Defendant to distribute and possess with the intent to distribute in excess of 1 00 grams of heroin. The May 27th phone call was simply not material to this finding. There is no reasonable probability that, had the evidence in question been disclosed, the result of the proceeding would have been any different. For all of these reasons, Defendant cannot show that he was prejudiced by the alleged suppression of evidence. His *Brady* claim therefore lacks merit.

(Decision and Entry, ECF No. 95, PageID 410-11.)

Thus judge Rice has already decided that there was no prosecutorial misconduct involved with the telephone number question.

Claim IV also raises a Sixth Amendment ineffective assistance of trial counsel claim. The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel

6

> was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v.*

7

*Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12, 131 S. Ct. 770, 792 (2011).

> In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See Wong v. Belmontes, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); Strickland, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, Strickland asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

Counsel's performance is measured by "prevailing professional norms" at the time of the alleged errors. *Strickland, supra,* at 690; *Maryland v. Kulbicki*, 577 U.S. ___, 136 S. Ct. 2, *; 193 L. Ed. 2d 1 (2015); *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997).

The prejudice prong of *Strickland* is inferentially disposed of by Judge Rice's ruling just quoted. If the evidence was not material under *Brady,* failure to object cannot have been ineffective assistance of trial counsel because no prejudice occurred. Moreover, Ms. Bennett could not appropriately have objected at the suppression hearing because the May 27, 2009, conversation did not form a basis for the search warrant.

**Conclusion**

In accordance with the foregoing analysis, it is respectfully recommended that the Motion to Vacate be DENIED.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

March 4, 2016.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).