IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,　　　：

　　　　Plaintiff,

　　v.　　　　　　　　　　　　　：

PIERRE COLQUITT,

　　　　Defendant.　　　　　　：

Case No. 3:09-cr-109

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION FOR
NEW TRIAL (DOC. #742), SUPPLEMENTAL MOTION FOR NEW TRIAL
(DOC. #767), MOTION FOR REHEARING (DOC. #788), MOTION TO
COMPEL (DOC. #797), AND MOTION TO QUASH (DOC. #798); AND
OVERRULING AS MOOT DEFENDANT'S MOTION TO DISMISS (DOC.
#267), MOTION FOR EARLY PAROLE TERMINATION (DOC. #722),
MOTION FOR BOND (DOC. #733), AND MOTION TO APPOINT
COUNSEL (DOC. #743); JUDGMENT TO ENTER IN FAVOR OF THE
GOVERNMENT AND AGAINST DEFENDANT; THIS IS A FINAL,
APPEALABLE ORDER; TERMINATION ENTRY

---

This matter is currently before the Court on Defendant Pierre Colquitt's

following *pro se* motions: (1) a Motion for Early Parole Termination, Doc. #733; (2)

a Motion to Appoint Counsel, Doc. #743; (3) a Motion for a New Trial, Doc. #742;

(4) a Supplemental Motion for a New Trial, Doc. #767; (5) a Motion for a

Rehearing, Doc. #796; (6) a Motion to Compel, Doc. #797; and (7) a Motion to

Quash, Doc. #798. Two motions were filed with the assistance of counsel, to wit:

(1) a Motion to Dismiss, Doc. #267; and (2) a Motion for Bond (Doc. #733).

Plaintiff, the United States of America ("the Government"), submitted a Response

in Opposition to Defendant's Motions for a New Trial, Doc. #786, and Defendant submitted a Reply to the Government's Response. Doc. #787.

## I.    Factual Background and Procedural History

Due to the voluminous record in this case -- spanning over a decade and consisting of over 800 docket entries -- the Court shall outline the facts and procedural history necessary to resolve Defendant's motions.

### A.    2009 Proceedings, Appeal, and Post-Conviction Motions

On September 8, 2009, a grand jury in the U.S. District Court for the Southern District of Ohio issued a First Superseding Indictment against Defendant, charging him with five offenses, to wit: 1) conspiring to distribute and to possess with intent to distribute more than 100 grams of heroin (Count One); 2) possessing a firearm in furtherance of a drug trafficking crime (Count Two); 3) possessing a firearm by a convicted felon (Count Three); and 4) two charges of distributing heroin within 1000 feet of a school (Counts Four and Five). Doc. #19. Said indictment sought Defendant's conviction for dealing heroin between March 19, 2009, and May 29, 2009. *Id.* Defendant moved to suppress evidence obtained from a search of 826 West Pleasant Street, Springfield, Ohio ("826 West Pleasant") pursuant to a lawfully obtained search warrant. Doc. #26.

The Court held a hearing on a motion to suppress on February 16, 2010. Doc. #29. Defendant brought his motion, in part, under *Franks v. Delaware*, 438 U.S. 154 (1978), alleging that the affidavit to the search warrant contained material misstatements made in knowing falsity or with a reckless disregard for

2

their truth. *Id.*, PageID#73. Specifically, Defendant argued that the affidavit falsely stated that he sold heroin to an informant on April 22, 2009, when, in fact, no such transaction occurred, and misrepresented his criminal history, falsely listing that he was convicted of drug trafficking in July of 1998. Doc. #26, PageID#63. At the hearing, Defendant's attorney at the time, Cheryl Bennett, argued that Springfield Police Division Detective Keri Frasco ("Detective Frasco") improperly included these statements to secure a search warrant, thus invalidating the underlying search. Doc. #29, PageID##79–80.

In response, the Government argued that there was evidence supporting the fact that a drug transaction took place on April 22, 2009. *Id.*, PageID#88. In so arguing, the Government stated that a "confidential informant made a telephone call to the Defendant, not specifically necessarily to the Defendant's phone . . . . I will represent what phone number. It was 937-450-3801." *Id.* The Government further noted that the phone number was to "a female individual . . . also charged in this case who was . . . a girlfriend to the Defendant." *Id.*, PageID##88–89. As would become clear later, this individual was Latorya Bibbs ("Bibbs"), who testified against Defendant at trial.

The Court denied Defendant's motion to suppress on April 27, 2010, by written opinion. Doc. #36. In so ruling, the Court found that the informant "decidedly did not purchase heroin from [Defendant] at 826 West Pleasant on April 22, 2009[,]" but this did not negate the cumulative support for probable cause contained in the affidavit, to wit: multiple other transactions observed and

3

recorded at 826 West Pleasant between Defendant and confidential informants within a two and one-half month period. *Id.*, PageID##183, 185–88. Thus, even after excising any potential falsehoods from the affidavit, it still established probable cause to search 826 West Pleasant. *Id.*, PageID#190. Moreover, the Court found Detective Frasco's testimony -- that she made a mistake in copying and pasting information into the affidavit -- credible, labelling her failure to proofread said affidavit, at most, negligent. *Id.*, PageID#185. Because such negligence could not serve as a basis for relief pursuant to *Franks*, the Court overruled this argument. *Id.*

Defendant waived his right to a jury trial in open court on July 19, 2010, and proceeded at a bench trial before the undersigned on July 21, 2010. Doc. ##116, 117. During the first two days of trial, the issue of Defendant's competency was brought to the Court's attention. Doc. #117, PageID##790–96; Doc. #118, PageID##859–63. The Court, on July 23, 2010, ordered that he be sent to the custody of the Attorney General of the United States to have his competency to stand trial evaluated. *Id.* On August 17, 2010, the Court convened a conference to discuss the results of Defendant's competency evaluation; Defendant was declared competent to proceed, and the Court resumed trial on October 4, 2010. Doc. #120, PageID##953–58; Doc. #124.

On that date, Detective Frasco testified, at length, about the process through which law enforcement uncovered information about Defendant's narcotics dealing out of 826 West Pleasant. *See* Doc. #120. She testified that

4

she used an informant, Daryl Jenkins ("Jenkins"), to conduct several controlled buys from Defendant and had several recorded phone calls with Defendant to purchase heroin, including on March 19, 2009. *Id.*, PageID##968–71. Importantly here, she further testified on cross-examination that she witnessed a recorded phone call between a confidential informant and Bibbs. *Id.*, PageID##1056–57. This informant allegedly told Frasco that he called Bibbs on her cell phone at 937-450-6405 on May 27, 2009, to make arrangements to buy heroin, but Bibbs testified on cross-examination that this cellphone had been disconnected on May 25, 2009. *Id.*, PageID#1110.

As to the phone recordings and the controlled buys, Frasco testified that she would have Jenkins call Defendant's cell phone to arrange a sale. *Id.*, PageID##969–70. Frasco would search Jenkins and give him a voice-activated tape recorder and money to purchase heroin. *Id.* She would then drop Jenkins near the meeting place, and, when he would return after purchasing heroin from Defendant, he would deliver the drugs with the tape recording. Doc. #121, PageID##1152–57. At trial, Bibbs identified the voices on the three tape recordings of the controlled buys as Jenkins, Defendant, and herself. Doc. #117, PageID##800–07.

Bibbs generally testified to her knowledge of Defendant's narcotics dealing out of 826 West Pleasant. *See* Doc. #120, PageID##1105–07. Defendant attempted to introduce evidence in the form of a record from the cellphone company that Bibbs's cellphone was disconnected, thereby undermining the search

5

warrant affidavit that recounted the May 27, 2009, recorded phone call. *Id.*, PageID##1106–07. This would also attack Detective Frasco's credibility, as she testified that she called the phone number in question. *Id.*, PageID##1003–04, 1108. The Court sustained the Government's objection to this evidence, noting that it was: (1) irrelevant because Bibbs already testified that the phone was turned off; and (2) it did not qualify under the business record hearsay exception, because it was not properly authenticated. *Id.*, PageID#1108.

Earlier that day, counsel for both sides approached the Court about an issue Defendant raised to his attorney, Derek Farmer, who represented him at trial. *Id.*, PageID#1072. In particular, Defendant claimed that portions of the recorded phone calls -- including the April 22, 2009, phone call -- were intentionally cut short. *Id.*, PageID##1072–73. The Court permitted Defendant's attorney to question Bibbs on this point, and she testified to the best of her recollection about the phone call in question, including any portions that were unable to be heard on the call due to the audio quality or were purportedly cut from the call. *Id.*, PageID##1072–78.

On July 19, 2012, the Court issued its ruling, finding Defendant guilty on Counts 1, 2, 4, and 5[1] of the First Superseding Indictment. Doc. #77. In part, the Court relied upon the testimony of Detective Frasco, Bibbs, and Jenkins and

_____

[1] The Court granted the Government's Motion to Dismiss Count III of the Indictment on February 3, 2011. Doc. ##70, 74.

6

evidence of several controlled buys to show that, on numerous occasions, Defendant conspired to sell, and sold, heroin. *Id.*, PageID##308–13.

Defendant thereafter filed numerous *pro se* motions, claiming that the Government violated *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. Doc. ##64, 88. He fixated on the May 27, 2009, buy report and alleged discrepancy identified in Bibbs's testimony that her cellphone was disconnected on May 25, 2009. This Court overruled his arguments on August 12, 2013, relying, in part, on the fact that Defendant admitted his knowledge during and before trial that the phone was inoperable, thus the Government had no obligation to disclose evidence already in his possession. Doc. #95. Likewise, such evidence was immaterial, because the Government did not rely upon the May 27, 2009, phone call and purported transaction to prove Defendant's guilt. *Id.*

Defendant appealed only the Court's ruling on the motion to suppress to the U.S. Court of Appeals for the Sixth Circuit. *See United States v. Colquitt*, 604 F. App'x 424 (6th Cir. 2015). The Sixth Circuit affirmed. Recognizing that Detective Frasco was, at most, negligent in her preparation of the search warrant affidavit, the Sixth Circuit held that this Court's determination -- that Detective Frasco was otherwise credible -- was "virtually unassailable[.]" *Id.* at 430 (citing *United States v. Maliszewski*, 161 F.3d 992, 1020 (6th Cir. 1998)). The Sixth Circuit also agreed with the Court that, even putting aside any alleged false statements about the April 22, 2009, transaction, the remainder of the affidavit provided detailed information supporting probable cause: to wit, the reliability of the informant,

7

multiple controlled buys, and the fact that the last controlled buy occurred only two days before Detective Frasco sought the warrant. *Id.*

On March 14, 2016, Defendant filed a Motion to Vacate pursuant to 28 U.S.C. § 2255. Doc. #131. He reiterated his contentions that the search warrant and accompanying affidavit were false because of the phone number and criminal history contained therein. *Id.*, PageID##1485–89. The Court adopted the Report and Recommendations of United States Magistrate Judge Michael R. Merz and dismissed Defendant's Motion to Vacate, noting, as did Magistrate Judge Merz, that his claims lacked merit and were resolved by prior Orders. *See* Doc. #149.

### B. Supervised Release Violations and State Court Proceedings

Unsatisfied with this result, Defendant has spent the better part of seven years urging this Court to reconsider its rulings. To that end, he has filed hundreds of *pro se* motions, most of which have been stricken as vexatious. *See* Doc. ##177–710. During that time, he incurred alleged violations of his term of supervised release. That afforded him another opportunity to raise the present motions, which all seek the same relief -- reconsideration of this Court's decisions overruling his motion to suppress and finding him guilty on Counts 1, 2, 4, and 5 of the First Superseding Indictment.

On May 13, 2021, Defendant appeared before the Court on his supervised release violations, for which attorney Anthony Cicero entered an appearance on behalf of Defendant. Doc. ##728, 737. Mr. Cicero, however, soon filed a motion to withdraw, and the Court addressed said motion at the hearing. Doc. #737,

8

PageID#4143. Upon considering the motion and Defendant's desire to represent himself, the Court began to engage in a colloquy with Defendant in light of *Faretta v. California*, 422 U.S. 806 (1975) (holding that a defendant has the right to proceed *pro se* in a criminal trial only where he or she voluntarily and intelligently elects to do so, and that the state may not force a lawyer upon a defendant when he or she insists upon conducting his or her own defense); nonetheless, the Court recognized that Defendant's competency could undermine his ability to intelligently and voluntarily waive his right to counsel, and, thus, required that Defendant receive a psychiatric and psychological evaluation from a federal medical site. Doc. #737, PageID#4143. Meanwhile, on August 16, 2021, the Court sustained Mr. Cicero's motion to withdraw, and then appointed Ms. Bennett to represent Defendant. Doc. #745.

On November 3, 2021, the Bureau of Prisons issued psychological reports, stating that Defendant was competent to stand trial and competent at the time he committed his supervised release violations. Doc. ##747, 748. On May 4, 2022[2], the Court held a hearing on Defendant's latest violations of his supervised release, and Defendant requested a hearing on the psychological reports, allowing him to challenge the veracity of the information therein. Doc. #753. Defendant further expressed his desire to represent himself on the supervised release violations, and the Court took the matter under submission. Defendant submitted challenges to

---

[2] The Court did not attempt to affirmatively rule on the competency reports until the May 4, 2022, hearing, because the Defendant remained in custody in Warren County, Ohio, pending trial in that court until that point.

9

those psychological reports on May 13, 2022.  Doc. #754.  The Court then, at a
conference held on June 9, 2022, confirmed with Ms. Bennett that Defendant still
wished to represent himself.

Thereafter, the Court held a hearing on Defendant's objections to the
psychological reports on June 24, 2022.  Doc. #757.  In this hearing, the Court
overruled Defendant's objections, declared Defendant competent to proceed,
engaged in a colloquy with Defendant pursuant to *Faretta*, and permitted him to
represent himself upon finding that he could voluntarily and intelligently do so.  *See
id.*  The Court then appointed Ms. Bennett to remain as standby counsel.  *Id.*

On July 11, August 18, and September 29, 2022, the Court held hearings
on Defendant's supervised release violations.  Doc. ##758–60.  At the September
29, 2022, hearing, the Court found Defendant in violation of his supervised
release, sentenced him to a period of time served based on the credit he earned for
his 17 months of incarceration, and imposed a subsequent five-year period of
supervised release.  Doc. ##761, 764, 781.  Since then, however, Defendant has
refused to comply with the terms of his supervised release or adhere to his
Probation Officer's directives.  *See* Doc. ##793, 794.

The Court held an oral argument on November 10, 2022, as an attempt to
afford Defendant one last chance to argue the merits of his motions seeking, *inter
alia*, a new trial on the crimes for which he was convicted in 2009.  Defendant
opted to proceed *pro se*.  Ms. Bennett remained as standby counsel during the oral
argument.  Thereafter, Defendant submitted his Supplemental Motion for a New

Trial, and numerous other motions dealt with below.

Meanwhile, Defendant has been detained in Clark County, Ohio, pending trial on criminal charges since June of 2023.[3] *See State of Ohio v. Pierre O. Colquitt*, No. 23CR0433 (Clark Cnty. C.P. Ct. June 14, 2023). Trial was originally set for October 3, 2023; however, the Clark County Court of Common Pleas granted a continuance until October 30, 2023, based on the availability of a needed witness. *See State of Ohio v. Pierre O. Colquitt*, No. 23CR0433 (Clark Cnty. C.P. Ct. Oct. 6, 2023) (journal entry overruling Defendant's various motions and granting continuance). He remains detained in Clark County, Ohio pending trial, because he did not post the $10,000 bond set on his potential release. *See State of Ohio v. Pierre O. Colquitt*, No. 23CR0433 (Clark Cnty. C.P. Ct. July 14, 2023) (setting bond).

Likewise, Defendant was sentenced on charges -- upon which he was indicted in February of 2021 -- in Clark County, Ohio on August 10, 2023, to serve 9 months in jail. *See State of Ohio v. Pierre O. Colquitt*, No. 21CR0070 (Clark Cnty. C.P. Ct. Ohio Aug. 10, 2023). He appealed that decision on August 17,

_____

[3] Defendant was indicted on June 13, 2023, *see State of Ohio v. Pierre O. Colquitt*, No. 23CR0372 (Clark Cnty. C.P. Ct. June 13, 2023); however, he was reindicted on the same charges on July 10, 2023, *see State of Ohio v. Pierre O. Colquitt*, No. 23CR0433 (Clark Cnty. C.P. Ct. July 10, 2023), and the Clark County Court of Common Pleas dismissed the earlier indictment on the motion of the State of Ohio on September 15, 2023. *See State of Ohio v. Pierre O. Colquitt*, No. 23CR0433 (Clark Cnty. C.P. Ct. Sept. 15, 2023). Thus, to avoid confusion, all references to Defendant's Clark County criminal charges concern the latter charges upon which he was reindicted.

2023. *State of Ohio v. Pierre O. Colquitt*, No. 21CR0070 (Clark Cnty. C.P. Ct. Aug. 17, 2023).

Defendant was tried and convicted of felonious assault, failure to comply, obstruction, possession of cocaine, and possession of drug paraphernalia in the Warren County, Ohio Common Pleas Court in April of 2022. *See State of Ohio v. Pierre O. Colquitt*, No. 21CR037718 (Warren Cnty. C.P. Ct. Apr. 7, 2022). Thereafter, he appealed his conviction to the Ohio Court of Appeals for the Twelfth District. *State v. Colquitt*, 203 N.E.3d 810 (Ohio Ct. App. 2022). His conviction was reversed, due to the trial court's errors in allowing hybrid representation and not ensuring that he properly waived his right to counsel. *Id.* at 818–23. A trial was set on August 4, 2023, in Warren County, but this was vacated. *See State of Ohio v. Pierre O. Colquitt*, No. 21CR037718 (Warren Cnty. C.P. Ct. Aug. 4, 2023). As relevant here, he was granted an appeal bond in Warren County, but this was revoked on June 8, 2023; thus, Defendant has a state parole detainer in Warren County. *See State of Ohio v. Pierre O. Colquitt*, No. 21CR037718 (Warren Cnty. C.P. Ct. June 8, 2023).

To summarize, Defendant is scheduled to face trial in Clark County Common Pleas Court, and he remains detained in Clark County. Thereafter, he has two detainers to address: (1) the federal detainer here, issued for his violations of the conditions of his supervised release; and (2) the state parole detainer in Warren County, issued after his appeal bond was revoked.

12

## II.    Legal Analysis

Due to the extensive filings in this case, the Court will analyze each motion separately, providing a short synopsis of the arguments therein, and the relevant analysis necessary to resolve the motions.[4]  Because several of Defendant's arguments are duplicative, raise issues litigated and resolved long ago, and are sometimes indecipherable, the Court shall do its best to address the underlying merit of his various complaints.  For the reasons that follow, Defendant's motions shall be overruled.

### A.    Motion for New Trial and Supplemental Motion for New Trial (Doc. ##742, 767)

The Court turns first to Defendant's Motion for a New Trial and his Supplemental Motion for a New Trial, Doc. ##742, 767, as both raise related arguments -- contending that newly discovered evidence warrants a new trial.[5] Both motions are brought pursuant to Federal Rule of Criminal Procedure 33.

---

[4] As a *pro se* litigant, Defendant's filings and pleadings are "to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).  Nevertheless, *pro se* parties must still satisfy basic pleading requirements.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).
[5] Although Defendant's motions could be construed to raise a successive challenge to vacate his conviction -- pursuant to 28 U.S.C. § 2255 -- "[d]istrict courts should not recharacterize a motion purportedly made under some other rule as a motion made under § 2255" without the *pro se* defendant's agreement or opportunity to withdraw the motion.  *In re Shelton*, 295 F.3d 620, 622 (6th Cir. 2002) (quoting *Adams v. United States*, 155 F.3d 582, 583–84 (2d Cir. 1998)).  Accordingly, the Court expressly refuses to recharacterize Defendants' motions under § 2255 and resolves them in the manner set forth below.

### 1.    *Timeliness of Defendant's Motions*

Under Rule 33, "[a]ny motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). To satisfy this standard, "a defendant must establish: '(1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal.'" *United States v. Blackwell*, 459 F.3d 739, 768 (6th Cir. 2006) (quoting *United States v. Glover*, 21 F.3d 133, 138 (6th Cir. 1994)). When a criminal defendant appeals, the clock begins to run from the date of affirmance: here, March 11, 2015. Fed. R. Crim. P. 33(b)(1). Defendant's motions for a new trial -- filed on July 2, 2021, and November 10, 2022 -- are untimely on their face by many years.

Nonetheless, as Defendant argues, the Court may extend the time to file for defendants who "failed to act because of excusable neglect." Fed. R. Crim. P. 45(b); *see United States v. Munoz*, 605 F.3d 359, 367 (6th Cir. 2010). The Court weighs the following factors in making this determination: "(1) the danger of prejudice to the [nonmovant], (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the [movant], and (5) whether the [movant] acted in good faith." *Munoz*, 605 F.3d at 368 (quoting *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006)).

14

The factors, on balance, weigh against Defendant. First, nearly eight years passed between the affirmance of the verdict by the Sixth Circuit Court of Appeals and Defendant's initial motion; thus, the Government would suffer severe prejudice, because such a significant "lapse of time can cause memory fading, unavailability of witnesses, and the lowered credibility of witnesses -- all detrimental to the [Government's] case." *United States v. Rabinowitz*, No. 2:11-cr-230, 2019 WL 1024956, at *3 (S.D. Ohio Mar. 4, 2019) (Marbley, J.); *see United States v. Watts*, No. 21-5302, 2022 WL 706603, at *8–9 (6th Cir. Mar. 9, 2022). Second, reopening trial for issues decided long ago, *i.e.*, the alleged inaccuracies in the search warrant and exhibits, would undermine the public's interest in the finality of judgments. *See Rabinowitz*, 2019 WL 1024956, at *3.

Third and fourth, as to the reason for the delay and whether it was within his reasonable control, Defendant contends that "Derek A. Farmer was my attorney at the time. So it was his job to file within that 7 days so the delay was due to 'excusable neglect' on my end." Doc. #787, PageID#4757. "[T]he excuse given for the late filing" is the most important factor in this inquiry. *Munoz*, 605 F.3d at 372 (citations omitted). It is significant that the Sixth Circuit has "found that representation by allegedly ineffective counsel is a justifiable reason for delay in filing a Rule 33 motion." *United States v. Hall*, 979 F.3d 1107, 1124 (6th Cir. 2020) (citing *Munoz*, 605 F.3d at 371). But that justification is unavailable to toll the period after the defendant retains new counsel and the allegedly ineffective counsel no longer represents the defendant. *See id.*; *United States v. Elenniss*,

15

729 F. App'x 422, 425–26 (6th Cir. 2018). Here, although the Court does not find that Farmer was ineffective, he terminated his representation on September 9, 2013. *See* Doc. #105. Defendant offers no explanation for his delay in failing to file a Rule 33 motion within three years of this event. Nor could he, considering he has filed innumerable *pro se* motions in the meantime without moving under Rule 33, thus demonstrating that he was in reasonable control of the delay from September 9, 2013, until now. *See* Doc. ##177–710; *Elenniss*, 729 F. App'x at 426. Thus, these factors -- including the most important factor to the inquiry -- weigh against him.[6]

Finally, the Court considers whether Defendant's behavior is in good faith. Although Defendant has repeatedly run afoul of this Court's Orders forbidding him from submitting meritless, duplicative filings, there is no evidence in the record to indicate that he is acting in bad faith. Rather, the Court attributes his decision to repeat the same invalid arguments to his passion for his position. *Cf. Elenniss*, 729 F. App'x at 428 ("That [the defendant's] arguments reiterated points made previously cannot serve as the basis for a finding of bad faith.").

However, this factor does not outweigh the other factors against him. Accordingly, Defendant has not shown excusable neglect, and his motions are untimely.

---

[6] Plaintiff's *pro se* status would not justify his delay either, because "when a *pro se* litigant 'fails to comply with an easily understood court-imposed deadline, there is no basis for treating that party more generously than a represented litigant.'" *In re Edwards*, 748 F. App'x 695, 700 (6th Cir. 2019) (quoting *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)).

### 2. *Merits of Defendant's Rule 33 Motions*

For the sake of argument, the Court now addresses the merits underlying

Defendant's Rule 33 motions.

In his initial Motion for a New Trial, Defendant argues that he is entitled to a

new trial based on newly discovered evidence, because he contends that the

Government "knew that a phone call did not take place on that date according to

this court but at my sentencing still said that [Detective] Frasco was credible."

Doc. #742, PageID#4293. The Court construes this motion to raise four errors:

(1) a claim that the underlying motion to suppress ruling, which found probable

cause to search 826 West Pleasant, was improper, because the search warrant

affidavit falsely stated that a Confidential Informant called Defendant at 937-450-

3801 and this was the basis for probable cause, *see* Doc. #36, PageID#183; (2) a

claim that Detective Frasco's testimony and actions at the suppression hearing at

trial were incredible, thereby undermining the basis for the Court's rulings; (3) a

claim that these errors prejudiced his trial; and (4) a claim that these errors

prejudiced his sentence. To prevail on a motion for a new trial pursuant to Federal

Rule of Criminal Procedure 33, a defendant must satisfy a four-part test, showing

"that the evidence (1) was discovered only after trial, (2) could not have been

discovered earlier with due diligence, (3) is material and not merely cumulative or

impeaching, and (4) would likely produce an acquittal if the case were retried."

*United States v. Barlow*, 693 F.2d 954, 966 (6th Cir. 1982) (citations omitted).

"Newly discovered evidence does not include new legal theories or new

17

interpretations of the evidence." *United States v. Olender*, 338 F.3d 629, 635 (6th Cir. 2003) (citing *United States v. Seago*, 930 F.2d 482, 489 (6th Cir. 1991)).

The purported errors that Defendant identifies do not warrant a new trial for several reasons. Most notably, Defendant knew of this evidence -- the May 27, 2009, buy report and the alleged discrepancies about Bibbs's phone number -- before and during his trial. *See* Doc. #29, PageID##88–89. Moreover, even if Defendant's arguments surrounding this evidence are novel, "[a]n attempt to relitigate the case on a new theory is not considered newly discovered evidence but is merely [a] newly discovered issue of law." *Olender*, 338 F.3d at 636 (citing *United States v. Shelton*, 459 F.2d 1005, 1006–07 (9th Cir. 1972)). This principle would foreclose Defendant's claims, because he merely contends that the May 27, 2009, buy report and perceived inaccuracy as to Bibbs's phone number undermine the witnesses' credibility, but this issue is merely a recapitulation of his grievance with the search warrant for 826 West Pleasant. *Compare* Doc. #29, PageID##88–89 (cross-examination of Bibbs), *with* Doc. #742, PageID#4293. This potentially novel legal theory is, thus, barred.

Furthermore, Defendant's Motion fails upon the merits, because it does not identify material evidence, would serve only to impeach Detective Frasco's and Bibbs's testimony, and would not produce an acquittal if reintroduced. Even assuming *arguendo* that Defendant is correct about the falsity of the May 27, 2009, buy report and Bibbs's phone number, the several instances of drug

trafficking documented within the affidavit provided ample probable cause to search 826 West Pleasant. *See* Doc. #36, PageID##185–90. Indeed, the affidavit detailed the informant's reliability and credibility; listed numerous controlled buys conducted at 826 West Pleasant; and listed eyewitness corroboration of the informant's purchase of narcotics from the property. *Id.*; *Colquitt*, 604 F. App'x at 430; *cf. United States v. Caldwell*, 114 F. App'x 178, 180–81 (6th Cir. 2004) (search warrant affidavit demonstrated probable cause to search a residence where it listed controlled buys and the detective's confirmation that the informant entered the residence, returned to the detective, and produced narcotics purchased from the residence).

Nor does Defendant's contention that Detective Frasco offered false testimony at trial and the suppression hearing meet the standard necessary for relief. To warrant Rule 33 relief for false testimony, there are three requirements: (1) "the court is reasonably well satisfied that the trial testimony given by the material witness is false"; (2) "without the false testimony, the jury might have reached a different conclusion"; and (3) "the party seeking the new trial was taken by surprise when the false testimony was given, and was unable to meet it or did not know of its falsity until after the trial." *United States v. Willis*, 257 F.3d 636, 642–43 (6th Cir. 2001) (quoting *Gordon v. United States*, 178 F.2d 896, 900 (6th Cir. 1949)). Defendant's claims do not satisfy this test, as the record demonstrates that Detective Frasco was credible. As the Court noted in its decision overruling Defendant's motion to suppress, the Court credited Detective

Frasco's testimony that any alleged falsehoods appeared in the affidavit merely because of "copying and pasting" and her failure to proofread the affidavit thoroughly. Doc. #36, PageID##184–85. Thus, the Court shall adhere to its credibility determination based on its live interaction with her on the witness stand over a decade ago. *Id.*; *cf. Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) ("[O]nly the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said."). Further, as expressed in great detail in this Court's orders denying Defendant's various *pro se* motions, the May 27, 2009, buy report would not have made a difference in undermining the Court's rulings on the motion to suppress or Defendant's guilt. "[T]he Government did not rely on this particular phone call in proving any of the charges filed against Defendant." Doc. #95, PageID#411. This transaction did not affect the motion to suppress, because multiple controlled buys outside of May 27, 2009 -- on March 19, April 1, and April 22[7], 2009 -- supported

---

[7] To clarify, the April 22, 2009, controlled buy occurred in a vehicle near the informant's residence. *See* Doc. #36, PageID##183, 185. Adding this sale with the other controlled buys *inside* 826 West Pleasant -- as well as the corroborated and reliable testimony of the informants -- helped establish probable cause to search 826 West Pleasant. *See, e.g.*, *United States v. Jenkins*, No. 22-3687, 2023 WL 3963626, at *1–2 (6th Cir. June 13, 2023) (probable cause existed to search a residence where there was reliable testimony from an informant of drug dealing in the residence, the police conducted a controlled buy outside of the residence, and other evidence tied the defendant to drug dealing within the residence); *cf. United States v. Miller*, 850 F. App'x 370, 373–74 (6th Cir. 2021) (collecting related cases).

the search warrant affidavit and convictions.[8]  Doc. #36, PageID##185–90; Doc.

#77, PageID#312.

Defendant's Supplemental Motion for a New Trial does not change these

conclusions either.  He mostly reiterates his conclusions that he is entitled to a

new trial, because the May 27, 2009, buy report was not admitted into evidence

at the suppression hearing and that the May 27, 2009, controlled buy did not

occur.  Doc. #767, PageID##4417, 4420.  These are barred for the reasons stated

above.  But he further adds that the Sixth Circuit did not have said exhibit before it

when it considered his appeal.  *Id.*  This is for a good reason -- the Sixth Circuit's

record on appeal is generally limited to the documents introduced into evidence or

filed with the Court.  *See* Fed. R. App. P. 10(a).  Nevertheless, the May 27, 2009,

buy report would be irrelevant due to the Sixth Circuit's opinion, because it: (1)

affirmed this Court's finding that Detective Frasco was credible; and (2) found that

there was ample probable cause to issue the search warrant even without the

excised portions and properly excluded this fact from the affidavit.  *Colquitt*, 604

F. App'x at 429–30.  Thus, the Court clarifies that Defendant's speculative

---

[8] Relatedly, Defendant cannot show that he was surprised about Detective Frasco's
testimony, because his attorney attempted to contradict her on these grounds during the
trial.  *See* Doc. #120, PageID##1056–57; *see also, e.g.*, *Willis*, 257 F.3d at 648–49
(rejecting Rule 33 motion in proceedings where Defendant was not surprised by the nature
of the testimony and could have impeached it).

arguments surrounding the May 27, 2009, transaction lack merit, are irrelevant, and shall not serve as a basis to reopen this fourteen-year-old case.[9]

Defendant further contends that the Court must resolve an undiscovered *Franks* issue as to the recorded call on April 22, 2009. Doc. #767, PageID#4420. Although unclear, Defendant appears to contend that it was cut short when played at trial. *Id.* The search warrant affidavit recited the April 22, 2009, call as a basis for finding probable cause to search 826 West Pleasant. Doc. #36, PageID#182–83. This issue, however, is immaterial, because it would not undermine the cumulative weight of the other statements in the affidavit (for instance, the detailed information about the March 19 and April 1, 2009, transactions), the

_____

[9] Defendant's motion for a new trial refers to his prior motion for reconsideration, which was denied. In said motion, Defendant asserted that defense counsel Ms. Bennett was constitutionally ineffective, because she did not introduce a buy report that purportedly stated that the confidential informant was told "to meet her at 826 W. High St." Doc. #150, PageID#1733. According to Defendant, this report would have indisputably proven that he did not sell drugs on multiple occasions, as corroborated in the manner this Court detailed in its opinions denying Defendant's motion to suppress and finding of guilt. Nevertheless, as this Court and Magistrate Judge Merz noted -- in dismissing and recommending dismissal of Defendant's Motion to Vacate, respectively -- this argument is foreclosed by numerous barriers, including, *inter alia*, *res judicata* and *Stone v. Powell*, 428 U.S. 465 (1976) (barring habeas relief, on the grounds that evidence obtained in violation of the Fourth Amendment was introduced at trial, where the petitioner availed himself of the opportunity to challenge said evidence). Doc. #139, PageID##1614–18; Doc. #149, PageID##1724–25. His possible Sixth Amendment claim against Ms. Bennett, moreover, is meritless, because: (1) any possible typographical errors in the affidavit did not counter the overwhelming weight of the credibility of the live witnesses; and (2) this minor issue does not affect the remainder of the affidavit, which established probable cause to search 826 West Pleasant, *see Colquitt*, 604 F. App'x at 429–30, thus Defendant was not prejudiced. *See, e.g.*, *Fuqua v. United States*, No. 3:17-cv-01243, 2021 WL 1174536, at *13–14 (M.D. Tenn. Mar. 29, 2021) (rejecting ineffective assistance claims where the Sixth Circuit affirmed the denial of a motion to suppress, and defense counsel's failure to examine an exhibit would neither undermine that ruling or the finding of guilt on the underlying charges).

Court's finding that Detective Frasco's justification for any misstatements in the affidavit was credible, the recorded call's significance in placing Defendant on the phone with Jenkins on April 22, 2009, or Jenkins's testimony verifying that Defendant offered to sell him heroin on the call. *Id.*, PageID#184; Doc. #77, PageID##312–13; Doc. #121, PageID##1152–57; *see, e.g.*, *United States v. Jenkins*, 726 F. App'x 452, 460 (6th Cir. 2018) (rejecting argument on Rule 33 grounds as immaterial, because it would have only impeached the affiant's testimony, but the district court found said testimony credible).

Defendant also contends that Magistrate Judge Merz erred in referring to him as "Mr. Yarborough," because his name is Pierre Colquitt. Doc. #767, PageID##4417–18. Magistrate Judge Merz stated this in a Report and Recommendations recommending that this Court deny Defendant's Motion for Reconsideration, Doc. #151, PageID#1749, and the Court adopted said Report and Recommendations. Doc. #158. Defendant's challenge does not identify newly discovered evidence, or any other justifiable ground, that could afford him relief. Moreover, to the extent he wishes to revisit this issue raised in his Motion for Reconsideration -- yet again targeting the Court's determination that his Motion to Suppress deserved to be overruled -- this is futile for the reasons stated. Thus, these challenges are not cognizable under Rule 33.

His Supplemental Motion, when liberally construed in his favor, further contends that the Court erred in excluding the record demonstrating that Bibbs's cellphone was disconnected. Doc. #767, PageID#4418. He contends that Bibbs's

testimony that she recognized the document satisfies Federal Rule of Evidence 901(b)(1), therefore making the record admissible. *Id.* Defendant, however, misunderstands that the Court excluded this document, in part, because it did not meet the business record exception to hearsay, pursuant to Federal Rule of Evidence 803(6). The rule requires the "testimony of the custodian or another qualified witness" to authenticate the document. Fed. R. Evid. 803(6). Bibbs was unqualified, because she "played no role in the creation or compilation of the [disconnect notice] and was therefore in no position to attest to [its] reliability[,]" thus, it was properly excluded. *Calhoun v. Baylor*, 646 F.2d 1158, 1162 (6th Cir. 1981); *see also United States v. Mahar*, 801 F.2d 1477, 1493 (6th Cir. 1986).

Defendant finally alleges that, at an in-chambers conference on January 8, 2013, the Government admitted that the May 27, 2009, transaction did not happen. Doc. #767, PageID#4420. The Court has reviewed the transcript for that conference, and Defendant is incorrect; the Government did not admit such. Nevertheless, the other transactions proven at trial warranted Defendant's conviction, thereby nullifying his challenge here. Doc. #95, PageID#411.

In sum, Defendant's Motions for a New Trial are without merit. Accordingly, they shall be overruled.

### 3. *Waiver and Res Judicata*

The Government contends that Defendant's arguments are barred based upon the doctrines of waiver and *res judicata*. Doc. #786, PageID##4753–54. The Court agrees in part. "A party who could have sought review of an issue or a

24

ruling during a prior appeal is deemed to have waived the right to challenge that decision thereafter[.]" *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997); *see also United States v. McKinley*, 227 F.3d 716, 718 (6th Cir. 2000). This principle forecloses Defendant's arguments about admitting certain exhibits into evidence at his suppression hearing and trial (to the extent those issues were not addressed in this Court's prior Orders).

However, it is not clear that *res judicata* is a bar to review under Rule 33 here, because the Court construes Defendant's challenge to raise a sufficiency of the evidence claim. *See Munoz*, 605 F.3d 373 (cleaned up) ("The paradigmatic use of a Rule 33 motion is to seek a new trial on the ground that the jury's verdict was against the manifest weight of the evidence."). "[A] trial judge may 'sit as a thirteenth juror' and consider the evidence to ensure that there is no miscarriage of justice." *United States v. Legette-Bey*, 147 F. App'x 474, 486 (6th Cir. 2005) (quoting *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988)). Nothing precludes this Court, in a bench trial, from performing that same function and reweighing the evidence concerning these issues.

Throughout his filings, Defendant challenges the sufficiency of the verdict against him -- targeting witness credibility and evidentiary rulings that led to his conviction. *See* Doc. #767, PageID##4418–20. Nonetheless, Defendant's arguments, as outlined above, lack merit and are untimely; the overwhelming evidence in the record demonstrates that he conducted illicit drug transactions out

25

of 826 West Pleasant on several occasions between March and May of 2016.[10]

*See* Doc. #77. Thus, his Rule 33 motions shall be overruled.

### 4. *Evidentiary Hearing*

The Court finally addresses whether Defendant has met the requirements to

receive an evidentiary hearing on his Rule 33 motion. In *United States v. O'Dell*,

805 F.2d 637, 643 (6th Cir. 1986), the Sixth Circuit recognized that a district

court's decision to hold an evidentiary hearing is firmly committed to its discretion.

Thus, where the evidence in question is "of minor significance" compared to "the

entire record," a district court may deny a Rule 33 motion without conducting an

evidentiary hearing. *Id.* Indeed, evidentiary hearings are warranted "only where

the verdict is 'already of questionable validity.'" *United States v. Winborn*, No. 16-

1038, 2016 WL 10749644, at *1 (6th Cir. Sept. 29, 2016) (unpublished order)

(quoting *O'Dell*, 805 F.3d at 643). Such is the situation here. Defendant identifies

issues of little to no significance, as he mostly targets what he perceives to be

---

[10] Although Defendant did not appeal this Court's verdict of guilty *per se*, evidence of Defendant's guilt was overwhelming, based not only on the evidence of the controlled buys, but also as the result of the credible testimony of Deputy Beller of the Clark County Sheriff's Office, who testified as follows. After Defendant's arrest, he overheard Defendant at the Clark County Jail instruct someone over the phone that they needed to look for a bag hidden in some weeds or bushes next to his grandmother's house. Doc. #121, PageID##1293–98. Beller then ran upstairs to inform Detective Frasco. *Id.*, PageID#1298. Earlier that day, Springfield police officers executed a search warrant at Defendant's grandmother's house, 325 W. Jefferson Street in Springfield, Ohio, and they returned to the vicinity. *Id.*, PageID#1298–99. Frasco thereafter called the officers and told them to return to the house, relaying the information from Beller. *Id.* Upon arrival, they saw Defendant's grandmother and another woman, who was on the phone, near the shrubbery by the vacant house next door. *Id.* The woman left the area when the officers arrived. *Id.* After searching the shrubbery unsuccessfully, the officers called a K9 unit to the scene, the dog successfully alerted, and the officers uncovered a bag of heroin from the shrubbery. *Id.*

26

inconsistencies in the testimony at trial, typographical errors in orders and documents, and irrelevant arguments about his constitutional rights. These are of minor significance, as demonstrated above, compared to the several instances of corroborated testimony and documentation proving that he sold heroin several times out of 826 West Pleasant from March until May of 2009. Thus, he is not entitled to an evidentiary hearing on his Rule 33 motions.

### B.    Motion to Quash (Doc. #798)

In his self-styled "Motion to Quash," Doc. #798, Defendant reiterates the same argument that this Court misrepresented the facts when it found, "Although the tape of the controlled buy on April 1, 2009, Gov't Exh. 5, was cut short, the detailed testimony of Buddy and Detective Frasco, concerning how the controlled buy was carried out, proves that Defendant also distributed heroin to Buddy at 826 W. Pleasant Street on that date."[11]  Doc. #77, PageID#318.  Although unclear, he

---

[11] The Court recognizes that motions to quash are normally applicable only in response to motions for subpoena, pursuant to Federal Rule of Criminal Procedure 17(c)(2), wherein the Court "may quash or modify the subpoena if compliance would be unreasonable or oppressive." The Court may order the Government to produce the documents in question under Rule 17 if: "(1) the documents are evidentiary and relevant"; (2) "they are not otherwise procurable, with due diligence, in advance of trial"; (3) "the party cannot properly prepare for trial without such production and inspection in advance of trial"; and (4) "the application was made in good faith and is not a fishing expedition." *United States v. Hughes*, 895 F.2d 1135, 1146 (6th Cir. 1990) (citing *United States v. Nixon*, 418 U.S. 683, 699 (1974)). Although Defendant does not properly invoke Rule 17 to raise his motion to quash, the Court shall liberally construe his request as a further motion for a new trial, based on the arguments he makes therein. Indeed, Defendant simply requests "that the above matter be quashed" in order that he may "continue on with [his] lawsuit" by restating the arguments about the April 22, 2009, recorded call. Doc. #798, PageID##4814–15. These arguments seek to attack one of the underlying bases for his conviction in the same manner as his motions for a new trial, thus favoring this liberal construction.

appears to contend that the issue is the April 22, 2009, transaction, and not the April 1, 2009, transaction, as the Court identified. Doc. #798, PageID#4814. He points to the Government's statement about the April 22, 2009, transaction at the suppression hearing, reciting Bibbs's phone number -- a number that Defendant contends is false. *Id.*, PageID##4814–15; *see* Doc. #29, PageID##88–89. He further expresses his belief that the recorded call on April 22, 2009, was cut short. Doc. #798, PageID#4814.

It remains unclear how any mistake in identifying with particularity the proper phone number would negate the remainder of the warrant or the sufficiency of his conviction, which -- as the Court has found several times -- relied on several other instances of drug trafficking in March, April, and May of 2009. *See* Doc. #77, PageID##309–15. This conclusion was affirmed on appeal; the Sixth Circuit ruled that, setting aside any false statements as to the April 22, 2009, transaction, the search warrant provided ample probable cause to search. *See Colquitt*, 604 F. App'x at 430. "Mere typographical errors do not undermine a finding of probable cause and do not invalidate a warrant." *United States v. Cannon*, No. 6:11-cr-02302, 2012 WL 5386045, at *2 (D.S.C. Nov. 1, 2012) (citing *United States v. Thomas*, No. 1:09CR360-1, 2009 WL 5215391, at *6 (M.D.N.C. Dec. 28, 2009)) (finding that listing incorrect phone number in an order did not undermine probable cause to authorize the release of GPS information for the correct phone number); *see United States v. Ventresca*, 380 U.S. 102, 108 (1965). Such is the case here, for the reasons stated in this Court's prior Orders and the Sixth Circuit's opinion.

28

Likewise, even if the April 22, 2009, call were cut short -- a contention that is based only on Defendant's conjecture -- then this fact would not undermine this Court and the Sixth Circuit's conclusions that the warrant, excised of any information about the April 22, 2009, controlled buy, contained probable cause. *See Colquitt*, 604 F. App'x at 426–27, 430 (referencing transactions on March 19 and April 1, 2009, along with the reliability of the confidential informant). Accordingly, the motion to quash shall be overruled.

### C. Motion to Compel (Doc. #797)

Defendant also filed a Motion to Compel, urging the Government "to hand over all exhibits from trial, all exhibits from the suppression hearing, Latorya L. Bibbs audio recordings that have . . . been requested[,]" and any other discovery he desires. Doc. #797, PageID#4812. Construed liberally, Defendant seeks exculpatory material under *Brady v. Maryland* to assist him in his quest to have a new trial on the issues identified herein. "Under *Brady*, 'a defendant's due process rights are violated if the prosecution suppresses material exculpatory evidence that is favorable to the defense.'" *Jefferson v. United States*, 730 F.3d 537, 550 (6th Cir. 2013) (quoting *Hanna v. Ishee*, 694 F.3d 596, 610 (6th Cir. 2012)).

Defendant's request, however, fails as a matter of law for the reasons stated in this Court's Order denying his original *Brady* motions. Doc. #95. To wit, (1) the trial exhibits, audio recordings, and suppression hearing exhibits were available to him; therefore, he cannot prevail in arguing that the Government suppressed this evidence, *see Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000);

29

(2) this evidence is either irrelevant or immaterial on the issue of Defendant's guilt, because this finding was predicated, in part, upon the credible testimony of Frasco, Jenkins, and Bibbs as to several other transactions on different occasions and recorded phone calls tying Defendant to said transactions, *see* Doc. #95, PageID##410–11; and (3) his general request for any and all discovery related to his claims runs afoul of the principle that "the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *United States v. Bagley*, 473 U.S. 667, 675 (1985).  This motion lacks merit and, thus, shall be overruled.

### D.    Motion for Rehearing (Doc. #788)

In his Motion for Rehearing, Defendant adheres to his conclusion that the recorded conversation on April 22, 2009, in which he asks Jenkins if he wanted to buy heroin, is insufficient to substantiate his conviction, because Jenkins did not answer Defendant's question asking how much heroin he wanted to buy.  Doc. #788, PageID##4760–61.  Nevertheless, Defendant does not meaningfully undermine the credible testimony of Detective Frasco and Jenkins, who both testified that Defendant sold Jenkins heroin on March 19, 2009, and April 1, 2009.  *See* Doc. #77, PageID#318; Doc. #120, PageID##969–75; Doc. #121, PageID##1158–60.

Defendant further argues that, in his opinion, the information in the search warrant affidavit is wrong, must be stricken, and therefore invalidates his

conviction. He relies upon multiple purported falsities, including, *inter alia*, the discrepancy between the phone numbers at issue, allegedly incorrect citations to his convictions in state court contained in the warrant, and his belief that the recorded call on April 22, 2009, was cut short. Doc. #788, PageID##4761–67. However, the Court already ruled that the affiant was credible, thus nullifying his blanket challenge to the affidavit. Doc. #36, PageID##183–84. Moreover, his quarrel with these issues do not rise to the level of materiality sufficient to even warrant a *Franks* hearing, let alone invalidate his conviction, as any mistakes in the affidavit amount to typographical errors. *Id.*, PageID##184–85; *see Cannon*, 2012 WL 5386045, at *2. Likewise, as expressed in greater detail above, the Court rejects Defendant's other challenges to the sufficiency of the evidence supporting his conviction -- including his challenge to the April 22, 2009, conversation, as even if the call was cut short, it does nothing to contradict the significant evidence demonstrating his drug dealing in March, April, and May of 2009. *See* Doc. #77, PageID##309–15. This includes the fact that Defendant is recorded, on these calls, telling informants where to meet him to buy heroin. *Id.*, PageID##312–13. Thus, this motion, and the arguments made therein, are overruled.

### E.     Motion to Dismiss (Doc. #267)

With the assistance of counsel, on May 16, 2019, Defendant filed a motion to dismiss his alleged supervised release violation incurred, in part, based on his failure to follow a special condition restricting his ability to submit filings in the instant case. Doc. #267. The Court resolved this alleged supervised release

violation in the underlying proceedings, *see* Doc. #761, so this motion shall be overruled as moot.

### F.    Motion for Early Parole Termination (Doc. #722)

Defendant's next *pro se* motion seeks "early parole termination[,]" "ask[s] this court to . . . construe this motion liberally[,]" yet only states thereafter, "Def Ex B who told the CI to meet him at 826 W. Pleasant St." Doc. #722, PageID#4075. Defendant's sole request for relief, when construed liberally, seeks to revisit the truthfulness of the May 27, 2009, buy report, which features the same language. *See* Def. Exh. B. For the reasons stated above, this is insufficient to justify Defendant's release.

However, it appears that this motion -- filed on November 23, 2020 -- also served as Defendant's attempt to challenge his supervised release violations. Nonetheless, the Court resolved the underlying supervised release violations of which he complains, pursuant to its Decision and Entry on September 30, 2022 -- finding him in violation of his supervised release, sentencing him to time served, and imposing an additional five-year term of supervised release. Doc. #761, PageID##4402–03. Accordingly, this motion shall be overruled as moot.

### G.    Motion for Bond (Doc. #733)

Defendant, through the assistance of counsel, sought release from detention, pending the resolution of his supervised release violation in 2021. Doc. #733. Nevertheless, the Court denied Defendant's request for the reasons stated on the April 13, 2021, telephone conference with counsel, and the underlying

supervised release violations were resolved on September 30, 2022.  Doc. #761.

Moreover, as outlined above, Defendant is scheduled for trial in Clark County, Ohio

on October 30, 2023, and he is detained there, because he did not pay his

$10,000 bond.  *See State of Ohio v. Pierre O. Colquitt*, No. 23CR0433 (Clark

Cnty. C.P. Ct. July 14, 2023).  The Court, therefore, rejects his repeated argument

that the federal detainer somehow prevents his release; for all Defendant knows,

the Court may have released said detainer had he paid the $10,000 bond.

Therefore, this motion will be overruled as moot.

> **H.    Motion to Appoint Counsel (Doc. #743)**

After the Court granted Mr. Cicero's motion to withdraw, Defendant moved

for appointment of counsel, and requested that Ms. Bennett be appointed to

represent him.  Doc. ##736, 743.  As outlined above, Ms. Bennett was appointed

as counsel, and she served as lead counsel until the June 24, 2022, hearing.  Doc.

##745, 757.  After the Court became satisfied that Defendant was competent and

able to represent himself voluntarily and knowingly -- upon engaging in the *Faretta*

colloquy with him -- the Court permitted him to represent himself with Ms. Bennett

as standby counsel.  *See id.*  Therefore, Defendant's Motion to Appoint Counsel

shall be overruled as moot.

## III.    Conclusion

For the foregoing reasons, the Court OVERRULES Defendant's Motion for a

New Trial, Doc. #742, Supplemental Motion for a New Trial, Doc. #767, Motion

for a Rehearing, Doc. #796, Motion to Compel, Doc. #797, and Motion to Quash,

Doc. #798. The Court OVERRULES AS MOOT Defendant's Motion to Dismiss,

Doc. #267, Motion for Early Parole Termination, Doc. #722, Motion for Bond, Doc.

#733, and Motion to Appoint Counsel, Doc. #743.

Judgment is to be entered in favor of the Government, and against

Defendant. Said Judgment will be a final, appealable order.

Case No. 3:09-cr-109 remains terminated upon the docket records of the

United States District Court for the Southern District of Ohio, Western Division, at

Dayton.


Date: October 19, 2023

WALTER H. RICE
UNITED STATES DISTRICT JUDGE